UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

L & S Industrial & Marine, Inc.,

       Plaintiff,

v.                                                                Civil No. 08-1251 (JNE/SRN)
                                                               ORDER

United States of America,

       Defendant.

Thomas A. Forker, Esq., and Gordon P. Heinson, Esq., Fabyanske Westra Hart & Thomson, PA, appeared for Plaintiff L & S Industrial & Marine, Inc.

Michael R. Pahl, Esq., U.S. Department of Justice, Tax Division, appeared for Defendant United States of America.

L & S Industrial & Marine, Inc. (L&S), brings this action against the United States of America, seeking a refund of certain taxes paid and "an order requiring the IRS to abate [certain] unpaid assessments." The government counterclaimed, seeking a judgment in the amount of the unpaid assessments. The case is before the Court on L&S's Motion for Summary Judgment. For the reasons set forth below, the Court grants the motion.

## I.    BACKGROUND

The parties have stipulated to the following facts:

> L & S Industrial & Marine, Inc. contracts with the U.S. Army Corps of Engineers to dredge portions of inland waterways. The dredging is done to keep the river channel open to shipping. The contract will specify the area and the amount of sediment and other material that is to be dredged from the river. The U.S. Army Corps of Engineers may tell L & S Industrial & Marine, Inc. where to dispose of the sediment and other material that is dredged. L & S Industrial & Marine, Inc. moves their equipment and vessels to the site of the dredging operation on the inland waterway and uses their equipment and vessels to dredge the river and move the sediment and other material to another location.

In August 2007, pursuant to 26 U.S.C. § 4042 (2006) and related regulations, the Internal Revenue Service assessed against L&S taxes on fuel of approximately $17,000, plus interest and penalties. L&S paid $183.15 in taxes in September 2007. However, L&S now disputes whether its activities—dredging inland waterways pursuant to a contract with the U.S. Army Corps of Engineers—render it subject to the fuel tax under section 4042, and L&S seeks a refund and "an order requiring the IRS to abate the unpaid assessments."[1]

## II. DISCUSSION

There being no material facts in dispute, the Court addresses solely the legal issues of whether section 4042 is applicable to L&S's activities and whether L&S is entitled to judgment as a matter of law as a result. *See* Fed. R. Civ. P. 56(c). No court has previously examined section 4042 in any detail. The Court's "objective in interpreting a federal statute is to give effect to the intent of Congress." *United States v. McAllister*, 225 F.3d 982, 986 (8th Cir. 2000) (quotation marks omitted). "If the plain language of the statute is unambiguous, that language is conclusive absent clear legislative intent to the contrary. Therefore, if the intent of Congress can be clearly discerned from the statute's language, the judicial inquiry must end." *Id.* (citation omitted). "Only if the statute is ambiguous [should a court] look to the legislative history to determine Congress's intent." *United States v. Maswai*, 419 F.3d 822, 824 (8th Cir. 2005) (quotation marks omitted). "[I]n the interpretation of statutes levying taxes . . . [courts must not] enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt

---

[1] Ordinarily, "full payment of a tax assessment is required prior to bringing suit in federal court." *Noske v. United States*, 911 F.2d 133, 136 (8th Cir. 1990). An exception exists, however, for "assessments, such as excise taxes, which are 'divisible' into a tax on each transaction or event." *Id.* These taxes "may be challenged in federal district court by paying only one division." *Id.* The fuel excise tax levied by section 4042 is assessed quarterly. *See* 26 U.S.C. § 4042(a). The amount paid by L&S—$183.15—represents the sum assessed against L&S pursuant to section 4042 for the first quarter of 2004. Accordingly, this case is properly before the Court.

2

[taxation statutes] are construed most strongly against the Government, and in favor of the citizen." *Sec. Bank Minn. v. Comm'r*, 994 F.2d 432, 441 (8th Cir. 1993) (quotation marks omitted).[2]

**A.     Language of the statute**

Section 4042(a) imposes "a tax on any liquid used during any calendar quarter by any person as a fuel in a vessel in commercial waterway transportation." "[C]ommercial waterway transportation" is defined as:

> any use of a vessel on any inland or intracoastal waterway of the United States—
>     (A) in the business of transporting property for compensation or hire, or
>     (B) in transporting property in the business of the owner, lessee, or
>     operator of the vessel (other than fish or other aquatic animal life caught
>     on the voyage).

26 U.S.C. § 4042(d)(1). Section 4042(c) creates exemptions from the fuel tax for certain vessels and uses, none of which are applicable to L&S:

> (1) Deep-draft ocean-going vessels.—The tax imposed by subsection (a) shall not
> apply with respect to any vessel designed primarily for use on the high seas
> which has a draft of more than 12 feet.
> (2) Passenger vessels.—The tax imposed by subsection (a) shall not apply with
> respect to any vessel used primarily for the transportation of persons.
> (3) Use by state or local government in transporting property in a state or local
> business.—Subparagraph (B) of subsection (d)(1) shall not apply with respect to
> use by a State or political subdivision thereof.
> (4) Use in moving LASH and SEABEE ocean-going barges.—The tax imposed
> by subsection (a) shall not apply with respect to use for movement by tug of
> exclusively LASH (Lighter-aboard-ship) and SEABEE ocean-going barges

---

[2] The government argues that L&S has the burden of establishing that it does not have to pay the tax because a tax exemption or deduction "'is a matter of legislative grace and . . . the burden of clearly showing the right to the claimed deduction is on the taxpayer.'" *Libson Shops, Inc. v. Koehler*, 229 F.2d 220, 222 (8th Cir. 1956) (quoting *Interstate Transit Lines v. Comm'r*, 319 U.S. 590, 593 (1943)); *see also Storall Mfg. Co. v. United States*, 755 F.2d 664, 665 (8th Cir. 1985). Here, though, L&S does not seek application of an exemption or deduction but instead contests the applicability of the taxation statute itself. *Cf.* 26 U.S.C. § 4042(c) (listing "[e]xemptions").

3

released by their ocean-going carriers solely to pick up or deliver international cargoes.

L&S argues that the tax is inapplicable because the phrase "transporting property" should be construed to include only movement of commercial cargo or freight. In contrast, the government asserts that the word "property" in section 4042(d) should be construed broadly. Accordingly, the government contends that L&S was "transporting property in the business of the owner, lessee, or operator" within the meaning of section 4042(d)(1)(B) because L&S transported its dredging equipment and vessels in connection with its dredging activities. The government does not contend that section 4042(d)(1)(A) is applicable to L&S, and it disclaims any argument that sediment and other byproducts of dredging constitute "property" within the meaning of the statute.

"The Court will avoid an interpretation of a statute that renders some words altogether redundant and should avoid a statutory construction that would render another part of the same statute superfluous." *United States v. Stanko*, 491 F.3d 408, 413 (8th Cir. 2007) (citation omitted) (quotation marks omitted). If "transporting property" included any movement of a vessel used as a vessel, section 4042 would be applicable to any vessel used for commercial purposes. This result would render the phrase "transporting property" superfluous. Accordingly, the Court concludes that it is clear that L&S's movement of its vessels, standing alone, does not qualify as "transporting property" for purposes of section 4042(d).

In ascertaining the meaning of the phrase "transporting property" in section 4042(d)(1), the Court considers the phrase "other than fish or other aquatic animal life caught on the voyage" to be significant. This latter phrase constitutes an exception to the meaning of "transporting property" rather than an exemption from the class of vessels subject to the tax. As a practical matter, any vessel that is used at least in part to catch fish or other aquatic life will necessarily

have on board equipment for that purpose. Consequently, if carrying such equipment for use in catching fish qualified as "transporting property" within the meaning of section 4042(d)(1), a fishing vessel would be taxable throughout its entire voyage regardless of whether it caught and transported fish, and the reference in the statute to "fish or other aquatic life caught on the voyage" would be meaningless. Accordingly, carrying fishing equipment for use in catching fish cannot belong to the class of activities that constitute "transporting property" within the meaning of section 4042(d)(1). While carrying dredging equipment for use in dredging and carrying fishing equipment for use in fishing are not perfect analogues, they both appear to belong to the same general class of activities; for example, both dredging equipment and fishing equipment, at least when not carried as commercial cargo, are used to complete a task during a vessel's voyage. Because of these similarities, the Court concludes that the language of the statute, though not free of ambiguity, indicates that movement of dredging equipment aboard L&S's vessels as part of L&S's dredging activities does not qualify as "transporting property" for purposes of section 4042(d)(1).

**B.     Legislative history**

Review of the relevant legislative history—identified by both parties as a 1977 report of the House Ways and Means Committee, H.R. Rep. No. 95-945(II), at 38-54 (1977), *as reprinted in* 1977 U.S.C.C.A.N. 3721-32—reinforces the Court's tentative interpretation of the language of section 4042. As is relevant to this case, the report explains the tax as follows:

I.     SUMMARY

> TITLE II IMPOSES AN EXCISE TAX OF 4 CENTS PER GALLON BEGINNING OCTOBER 1, 1979 (6 CENTS PER GALLON BEGINNING OCTOBER 1, 1981), ON DIESEL AND OTHER FUELS USED BY COMMERCIAL CARGO VESSELS ON ANY OF THOSE INLAND OR INTRACOASTAL WATERWAY SYSTEMS SPECIFIED IN TITLE I OF THE BILL. . . .

5

THE TAX WILL NOT APPLY TO DEEP-DRAFT OCEAN-GOING VESSELS (WHICH GENERALLY DO NOT MAKE SUBSTANTIAL USE OF THE INLAND AND INTRACOASTAL WATERWAYS), TO RECREATIONAL VESSELS (MOST OF WHICH ARE ALREADY SUBJECT TO FUEL TAXES), AND TO NONCARGO VESSELS SUCH AS PASSENGER VESSELS AND FISHING BOATS. IN THE CASE OF A COMMERCIAL CARGO VESSEL, ONLY FUEL CONSUMED ON THE SPECIFIED INLAND OR INTRACOASTAL WATERWAYS WILL BE SUBJECT TO TAX.

II. GENERAL STATEMENT

PRESENT LAW

UNDER PRESENT LAW, FEDERAL EXPENDITURES FOR THE NATION'S INLAND WATERWAY TRANSPORTATION SYSTEM ARE FINANCED FROM GENERAL REVENUES—THAT IS, FROM TAXPAYERS IN GENERAL RATHER THAN THROUGH FEDERAL CHARGES IMPOSED ON DIRECT USERS OF THE SYSTEM. IN PARTICULAR, AT PRESENT THERE IS NO FEDERAL EXCISE TAX IMPOSED ON DIESEL FUEL CONSUMED BY COMMERCIAL CARGO VESSELS USING THE FEDERALLY-BUILT-AND-MAINTAINED INLAND WATERWAY SYSTEM.

. . . .

REASONS FOR CHANGE

. . . .

THE COMMITTEE HAS CONCLUDED THAT COMMERCIAL FREIGHT CARRIERS USING CERTAIN FEDERALLY-SUPPORTED WATERBORNE TRANSPORTATION FACILITIES SHOULD PAY A PORTION OF THE COSTS OF DEVELOPING AND MAINTAINING THE SYSTEM IN THE FUTURE. ACCORDINGLY, THE COMMITTEE HAS IMPOSED A FUEL TAX ON SUCH INLAND OR INTRACOASTAL WATERWAY USERS COMMENCING OCTOBER 1, 1979, WITH AN INCREASE IN THE TAX RATE TWO YEARS THEREAFTER. THE FUEL TAX WOULD BE RELATIVELY EASY TO ADMINISTER IN COMPARISON WITH ALTERNATIVE MECHANISMS SUGGESTED FOR RAISING REVENUES FROM COMMERCIAL USERS OF THE INLAND OR INTRACOASTAL WATERWAY SYSTEM, AND ITS IMPOSITION ESTABLISHES THE PRINCIPLE OF APPLYING THE USER CHARGE CONCEPT. . . .

. . . .

> TYPE OF BUSINESS TAXED
>
> IN GENERAL, THE TAX WILL APPLY TO THE USE OF FUEL BY ANY VESSEL (1) IN THE BUSINESS OF TRANSPORTING PROPERTY FOR COMPENSATION OR HIRE, OR (2) IN TRANSPORTING PROPERTY IN THE BUSINESS OF THE VESSEL'S OWNER LESSEE, OR OPERATOR. (HOWEVER, THE TRANSPORTATION OF FISH OR OTHER AQUATIC ANIMAL LIFE CAUGHT ON THE VOYAGE IS NOT TO BE TREATED AS A TAXABLE TRANSPORTING OF PROPERTY IN THE BUSINESS OF THE VESSEL'S OWNER, ETC.) THUS, THE TAX APPLIES BOTH WHERE THE SHIPPER HIRES AN UNRELATED CARRIER TO TRANSPORT PRODUCTS FOR A FEE AND WHERE THE SHIPPER USES A CARRIER OPERATION WHICH THE SHIPPER DIRECTLY OR INDIRECTLY OWNS, LEASES, OR OPERATES TO TRANSPORT PRODUCTS (WHETHER OR NOT A FEE IS CHARGED). FOR EXAMPLE, WHERE A MANUFACTURER AND A BARGE COMPANY ARE MEMBERS OF THE SAME AFFILIATED GROUP, AND THE BARGE COMPANY CARRIES PRODUCTS OF THE SAME AFFILIATED GROUP, AND THE BARGE COMPANY CARRIES PRODUCTS OF THE MANUFACTURER, THE NEW TAX WILL APPLY TO FUEL USED BY THE COMPANY'S VESSELS FOR SUCH CARRIAGE.
>
> OTHER BUSINESSES
>
> THE TAX WILL NOT APPLY TO FUEL USED IN COMMERCIAL PASSENGER VESSELS, SUCH AS THE DELTA QUEEN OR THE MISSISSIPPI QUEEN EVEN IF SUCH A VESSEL IN FACT CARRIES PROPERTY ON A PARTICULAR VOYAGE. IN ADDITION, THE TAX IMPOSED BY THE BILL GENERALLY WILL NOT APPLY TO FUEL USED BY RECREATIONAL OR FISHING VESSELS ON THE INLAND OR INTRACOASTAL WATERWAYS.

H.R. Rep. No. 95-945(II), at 39-42. Accordingly, while House Report 945(II) indicates that the tax created by section 4042 was intended as a user fee to ensure that certain vessels using federally maintained waterways would bear a larger portion of the costs of waterway upkeep, it repeatedly refers to the vessels subject to the tax as "COMMERCIAL CARGO VESSELS" or "COMMERCIAL FREIGHT VESSELS," which suggests that Congress did not intend to tax vessels engaged in dredging activities.[3]

---

[3] While a court should avoid an interpretation of a statute that renders part of the statute superfluous, *see Stanko*, 491 F.3d at 413, from the face of this statute, section 4042(d)(1)(A)

The government's arguments regarding the legislative history focus on a section of House Report 945(II) entitled "MISCELLANEOUS USES," which states as follows:

> ANY USE OF FUEL ON THE SPECIFIED INLAND OR INTRACOASTAL WATERWAYS BY A COMMERCIAL VESSEL CARRYING CARGO (OTHER THAN A DEEP-DRAFT OCEAN-GOING VESSEL, PASSENGER VESSEL, ETC.) WILL BE SUBJECT TO TAX, INCLUDING USE OF FUEL BY A BARGE WHILE MOVING EMPTY OF CARGO, WHILE AWAITING PASSAGE THROUGH LOCKS, WHILE MOVING TO A REPAIR FACILITY, OR WHILE LOADING OR UNLOADING. IT IS CONTEMPLATED THAT THE TREASURY AND INTERNAL REVENUE SERVICE WILL ADOPT RULES FOR THIS PURPOSE COMPARABLE TO THOSE APPLYING UNDER SECTION 4041(C)(4) WITH RESPECT TO 'ANY USE OF AN AIRCRAFT * * * ', AND THAT THOSE RULES WILL APPLY BOTH TO USE IN THE BUSINESS OF TRANSPORTING PROPERTY FOR HIRE AND ALSO TO USE IN THE BUSINESS OF THE VESSEL'S OWNER, LESSEE, OR OPERATOR.

H.R. Rep. No. 95-945(II), at 43. Contrary to the government's contentions, this passage does not indicate that Congress intended the tax to apply to dredging vessels or that L&S's movement of dredging equipment qualify as "transporting property" for purposes of section 4042(d)(1). The phrase "ANY USE OF FUEL . . . BY A COMMERCIAL VESSEL CARRYING CARGO . . . WILL BE SUBJECT TO TAX, INCLUDING USE OF FUEL BY A BARGE WHILE MOVING EMPTY OF CARGO" is nonsensical. Construed charitably, this phrase could indicate that the tax was intended to apply to vessels that do not actually transport property. Such an interpretation would be consistent with the statute, as a vessel need not actually be used *to*

---

appears to be totally subsumed within section 4042(d)(1)(B). Use of a vessel "in the business of transporting property for compensation or hire" under section 4042(d)(1)(A) will seemingly always also constitute use of a vessel "in transporting property in the business of the owner, lessee, or operator of the vessel" under section 4042(d)(1)(B); that is, someone in the business of transporting property for money will always be transporting property in his or her business. The Court notes that, by stating that the tax applies to both (1) a stand-alone carrier operation and (2) an in-house carrier that is part of a vertically integrated business arrangement that would not normally be considered to be "in the business of transporting property," the legislative history suggests a way in which these two provisions can be reconciled. *See* H.R. No. Rep. 95-945(II), at 41.

transport property to be used *in* the business of transporting property, *see* 26 U.S.C. § 4042(d)(1)(A), or to be used *in* transporting property in the business of the owner, lessee, or operator of the vessel, *see id.* § 4042(d)(1)(B). However, by potentially indicating that an indirect relationship between operation of a vessel and transportation of property is all that is required for application of the tax, the report does nothing to elucidate the meaning of the phrase "transporting property," which, as discussed above, should not be effectively eliminated from the statute. Similarly, a single use of the phrase "USE IN THE BUSINESS OF THE VESSEL'S OWNER, LESSEE, OR OPERATOR" without a direct reference to transportation of property does not suggest that the phrase "transporting property" should be read out of the statute. If anything, the passage's repeated references to cargo suggest that Congress did not intend that movement of dredging equipment for the purpose of engaging in dredging-related activities qualify as "transporting property" for purposes of section 4042(d)(1).

**C.     Treasury regulations**

The government argues that Treasury regulations establish "that the fuel excise tax [levied by 26 U.S.C. § 4042] applies to the operation of *all* vessels, regardless of whether the vessel is actually engaged in the transportation of property on a particular voyage." The government argues that the Court should defer to these regulations pursuant to the doctrine announced by the Supreme Court in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

A court reviewing an agency decision that applies or interprets a statute that the agency administers should, under some circumstances, defer to the agency's interpretation. *Ragsdale v. Wolverine Worldwide, Inc.*, 218 F.3d 933, 936 (8th Cir. 2000); *see Mayo Found. for Med. Research v. United States*, Nos. 07-3242 & 08-2193, 2009 WL 1635761, at*4-7 (8th Cir. June

12, 2009). Under the *Chevron* doctrine, "a reviewing court must determine whether congressional intent is clear from the plain language of the statute." *Ragsdale*, 218 F.3d at 936. If congressional intent is clear, no deference to the agency interpretation is warranted. *Id*. "If, however, the language of the statute is ambiguous, and the legislative history reveals no clear congressional intent, a reviewing court must defer to a reasonable agency interpretation of the statutory provision." *Id*. Such deference is appropriate because "[t]he responsibilities for assessing the wisdom of such policy choices and resolving the struggle between competing views of the public interest are not judicial ones, and because of the agency's greater familiarity with the ever-changing facts and circumstances surrounding the subjects regulated." *FDA v. Brown & Williamson Tobacco Corp*., 529 U.S. 120, 132 (2000) (citations omitted) (quotation marks omitted).

Treasury regulation section 48.4042-1 (2008) addresses the tax levied by 26 U.S.C. § 4042, stating in relevant part:

> (a) In general. Section 4042(a) imposes an excise tax on the use of liquid fuel in the propulsion system of commercial transportation vessels while traveling on certain inland and intracoastal waterways (see § 48.4042-1(f)). The tax applies generally to all types of vessels, including ships, barges, and tugboats. It is in addition to all other taxes imposed on the sale or use of fuel.
>
> . . .
>
> (f) Commercial waterway transportation—(1) In general. For purposes of section 4042(a) and § 48.4042-2(c)(1), the term "commercial waterway transportation" means the use of a vessel on the waterways specified in paragraphs (g)(1) through (27) of this section if:
>
>> (i) Use of the vessel is in the business of transporting property for compensation or hire, or
>>
>> (ii) Use of the vessel is in transporting property in the business of the owner, lessee, or operator of the vessel (whether or not a fee is charged).

10

> Except for the operation of certain fishing vessels, the operation of all vessels satisfying the requirements of paragraph (f)(1)(i) or (1)(ii) of this section will be deemed "commercial waterway transportation," regardless of whether the vessel is actually engaged in the transportation of property on a particular voyage. Thus, "commercial waterway transportation" includes the operation of vessels while moving empty of cargo, while awaiting passage through locks, while dislodging vessels grounded on a sandbar, while moving to or from a repair facility, while maneuvering around loading and unloading docks, and while fleeting barges into a single tow.

Treas. Reg. § 48.4042-1.

The government contends that the text following Treas. Reg. § 48.4042-1(f)(1)(ii) applies the fuel tax to all vessels not specifically exempted and that L&S's dredging activities are substantially similar to the non-cargo-related activities listed. The Court disagrees. First, the text following Treas. Reg. § 48.4042-1(f)(1)(ii) specifically states that use of a vessel must satisfy the requirements of either "paragraph (f)(1)(i) or (1)(ii)" before the tax will be applicable, and paragraphs (f)(1)(i) and (1)(ii) both require that operation of a vessel to be taxed involve transportation of property in some way.

Second, if the regulation did purport to apply the tax without regard to whether operation of a vessel involved transportation of property, the regulation would be contrary to the statute and could not be given effect. *See Ragsdale*, 218 F.3d at 940. According to the statute, the tax applies only when use of a vessel involves—in some manner—transportation of property. *See* 26 U.S.C. § 4042(d)(1)(A)-(B). The existence of such a requirement is clear. It is instead the nature of that requirement—the meaning of the phrase "transporting property"—that is the source of any statutory ambiguity. While the regulation could potentially help resolve that ambiguity, it does not do so in any way relevant to the present case.

Finally, the examples of commercial waterway transportation supplied by the text following Treas. Reg. § 48.4042-1(f)(1)(ii) should not be read, as the government suggests, to indicate that the tax is applicable without regard to whether operation of a vessel involved transportation of property. While the regulation may indicate that the tax applies to vessels even when they are not actually used to transport property, a vessel need not be used *to* transport property to be used *in* the business of transporting property, *see* 26 U.S.C. § 4042(d)(1)(A), or to be used *in* transporting property in the business of the owner, lessee, or operator of the vessel, *see id.* § 4042(d)(1)(B), as noted above. A vessel carrying no cargo could, for example, be used to dislodge from a sandbar another vessel carrying cargo. Under some circumstances, it is conceivable that operation of the first vessel could fall within the purview of the statute: such use might be considered indirect participation in transportation of the cargo of the second vessel or, alternatively, direct transportation of the second vessel itself. Similarly, an empty cargo vessel traveling to a destination to be repaired or to pick up cargo could be fairly considered to be operating in the business of transporting property.

D.     **Technical Advice Memorandum 9701002**

The government asks the Court to consider Internal Revenue Service Technical Advice Memorandum 9701002 (Jan. 3, 1997) (TAM 9701002), which the government contends is an indication that the Internal Revenue Service (IRS) has in the past taken the position that activities like those undertaken by L&S are taxable under section 4042. "A technical advice memorandum is a statement of the IRS position regarding a specific set of facts." *Bergman v. United States*, 174 F.3d 928, 930 n.5 (8th Cir. 1999). Technical advice memoranda "have no precedential value, but they do reveal the interpretation put upon the statute by the agency charged with the responsibility of administering the revenue laws and may provide evidence of

the proper construction of the statute." *Wells Fargo & Co. v. Comm'r*, 224 F.3d 874, 886 (8th Cir. 2000) (quotation marks omitted); *see also* 26 U.S.C. § 6110(k)(3) (2006) ("Unless the Secretary otherwise establishes by regulations, a written determination [including a technical advice memorandum] may not be used or cited as precedent.").

TAM 9701002, issued in 1997, addresses whether the fuel tax levied by 26 U.S.C. § 4042 applies to an agency of the United States that "operates tug boats and other work vessels in the maintenance and construction of waterway facilities" and uses those vessels to "move derrick boats, service barges, and equipment barges along the waterway to maintain and repair the locks and dams that comprise the waterway system." The agency argued that it was not engaged in the business of transporting property for compensation or hire under section 4042(d)(1)(A), and the IRS agreed. The agency further argued that section 4042(d)(1)(B) was inapplicable because it was engaged in the performance of public duties and not "business" within the meaning of the statute. The IRS disagreed and concluded that section 4042(d)(1)(B) applied to the agency's activities because the statutory term "business" encompasses performance of the duties of public office. Because TAM 9701002 does not address of the meaning of the phrase "transporting property" or arguments relevant to this case, the Court does not consider it persuasive.

### III. CONCLUSION

For the foregoing reasons, the Court concludes that both the language of 26 U.S.C. § 4042 and the statute's legislative history indicate that movement of vessels and dredging equipment by L&S in connection with L&S's dredging activities does not constitute "transporting property" for purposes of section 4042(d)(1). The other potential sources of statutory meaning marshaled by the government fail to cast doubt on the Court's conclusion. Accordingly, the government has not met its burden of establishing that the tax levied by

13

section 4042 is applicable to L&S's operation of its vessels in this case, and summary judgment in favor of L&S is warranted.

As a final matter, L&S seeks to recover costs and attorney fees under 26 U.S.C. § 7430 (2006). "In any administrative or court proceeding which is brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, the prevailing party may be awarded a judgment or a settlement for . . . reasonable litigation costs [including reasonable court costs and attorney fees] incurred in connection with such court proceeding." *Id.* § 7430(a). Because the case involved an issue of first impression and complex matters of statutory interpretation, the Court concludes that the government's position in this litigation, though respectfully rejected herein, was substantially justified, and the Court declines to award costs and attorney fees under 26 U.S.C. § 7430. *See id.* § 7430(c)(4)(B)(i) ("A party shall not be treated as the prevailing party in a proceeding to which subsection (a) applies if the United States establishes that the position of the United States in the proceeding was substantially justified."); *Estate of Cervin v. Comm'r*, 111 F.3d 1252, 1261 (5th Cir. 1997) ("The term 'substantially justified' means justified to a degree that could satisfy a reasonable person and having a reasonable basis both in law and fact." (quotation marks omitted)); *TKB Int'l, Inc. v. United States*, 995 F.2d 1460, 1468 (9th Cir. 1993) (indicating that the fact that the case involved an issue of first impression was relevant to whether the government's position was substantially justified).

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. L&S's Motion for Summary Judgment [Docket No. 9] is GRANTED.

2. The excise taxes, penalties, and interest assessed in August 2007 against L&S pursuant to 26 U.S.C. § 4042, discussed herein, are abated. The government shall return to L&S the $183.15 that L&S has already paid.

3. L&S is not entitled to costs and attorney fees under 26 U.S.C. § 7430.

4. The government's counterclaim is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: June 18, 2009

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge